And first case we'll hear this morning is United States v. Navarro, and Mr. Newton will hear from you first. Good morning, and may it please the Court. This morning I will address two issues raised in my opening brief. First, whether this Court should remand to the District Court to apply the correct standard governing Mr. Navarro's motion for a new trial, as the Sixth Circuit did in similar circumstances in the Mallory case. And second, whether the predicate offense for Mr. Navarro's Section 924J conviction, the Section 1958 offense where death resulted, is a crime of violence under the categorical approach. And if it is not, whether under the plain error standard, Mr. Navarro is entitled to relief from this Court. First, regarding the Rule 33 issue, the record shows the District Court applied an incorrect legal standard in denying Mr. Navarro's Rule 33 motion for a new trial. The District Court articulated a single legal standard, the Rule 29 standard, by referring to her review of the evidence in a light most favorable to the government and applying the deferential reasonable juror standard. I understand your argument. I looked at it and it looked to me like the Court's statement was a little more ambiguous than that. The last part of the sentence seemed to suggest that she heard all the witnesses and so forth. It's not absolutely clear. I understand your argument. It's hard to say whether she was applying the Rule 33 standard in the second part of the sentence. Do you have before you exactly what you said in that second half? I can get it. I do. And I can address the Court's question with two responses. The first response is it's very important to understand what she had before her when she ruled. The docket sheet clearly shows that the trial transcripts were not part of the record at that juncture. The trial transcripts were filed after she ruled. But didn't she preside? She did. She heard every word. My point is this. Whether a District Court is ruling on a Rule 29c renewed motion for a new trial without consulting trial transcripts, either ruling is going to equally necessarily depend upon the Court's recollection of the witnesses of the exhibits. So that statement is entirely neutral. You must say I was a District Judge. I don't think I ever had the transcript when I ruled on a new trial motion. I presided. I heard the evidence. And the standard is a rule that is a rare one to be applied. You act as a 13th juror and basically say there was a total miscarriage of justice and you want to start over. But my question wasn't whether she had the transcript. I don't think there's any basis for that argument. The question is whether she applied the wrong standard and then of course whether it was plain error. But the standard, I was just suggesting to you that it's not a slam dunk, but the second part of her statement looks like she may have been using a Rule 33 standard. My point, Your Honor, is not. My reference to transcripts is simply there weren't already transcripts. So the only way to interpret her comment. She doesn't have to go back and read the transcripts when she presided. This is a trial that she presided over, heard every word, and she said that. But she would have to say the same thing in denying a Rule 29 motion. It's her recollection, regardless of whether it's a Rule 29. Well, recollection, sure. Or she makes notes. I always make notes about things that were questioning Rule 29 or Rule 33. But I don't think you get very far. By arguing about the transcript, I think you can get farther by looking at what she said and how she ruled. And I think your point's a valid point. I'm just pointing out that maybe she did apply Rule 33. Let me address the second part, my second part of my answer. So obviously there's not a lot of precedent in this particular situation. The best precedent we have are two decisions of the Sixth Circuit, the Mallory case and the subsequent Bowen's decision, which both the parties have discussed in the briefs. Mallory involved simply a ruling on a Rule 33 motion where the court used, intermingled in the court's words, Rule 29 and Rule 33 language. Bowen's involved what this case involved, a joint Rule 29 and Rule 33, which is, I think, typical. Bowen's did not remand and it distinguished Mallory. But critically, in describing Mallory, it said, we found it unclear. Okay, but we're not bound by what a subsequent Sixth Circuit panel says about what an earlier Sixth Circuit panel did, right? Understood. And I guess, can I just ask you to address, you've already mentioned this, but can I just ask you to address what I think is just the huge difference between Mallory, which is, as you said, the only motion in Mallory was a Rule 33 motion, correct? Correct. So the moment Rule 29 language came out of the district court's mouth in Mallory, something has gone wrong, right? Because there is no Rule 29 motion in front of the district court in Mallory, right? Correct. So the mere fact the district court mentions the Rule 29 stuff suggests that we are off on the wrong foot, right? Correct. Whereas here, there's a joint motion. So the mere fact that the district judge mentioned Rule 29 isn't a problem. So I guess Mallory's a case where it seems like the only motion was X and the district court's talking about Y. Whereas here, there's a motion on X and Y. The district court very clearly talked about X. And so the only question is whether she also talked about Y. Why doesn't that make this case pretty different from Mallory? Well, the larger principle in Mallory to take away, I think, is there is a huge difference between the legal standard governing a Rule 29 motion and a Rule 29 motion. And is there any indication this district court judge is not fully aware of that fact? Your Honor, when we are ruling on a cold record, I don't think we can make assumptions about what law the court knew or did not know. We are bound by the record. And there is nothing in this record besides her reference to having heard the testimony and the evidence. And as I said earlier- Well, no. She says later that she denied your motions, plural. And I don't know what that means. She later says the denial of the motions. If she'd only denied a Rule 29 motion, it would be motions singular. She said motions. I don't think that adds anything to the government side of the argument because I don't think there's any dispute. She ruled on Rule 29 and Rule 33. The only question is did she apply the appropriate legal standard? And the entire argument the government has here is that when she made the reference to having heard the witnesses and reviewed the evidence, that's some sort of implicit application of Rule 33. Can I ask you a question? Do Rule 29 and Rule 33 have a duty to explain? I don't think so, right? They're not one of those- Some rules like sentencing the district court- In other words, if she had said your motions are denied, if she had said nothing but that, would we have this problem? Or would you have any basis for making this argument if she had simply said the motions are denied? I'm thinking, trying to think of other analogous situations that would, like in the civil context, a motion for judgment as a matter of law. I don't think she would have. Because we would assume that she knew the legal standard and applied it correctly. That's correct. I think there's a presumption that a court would follow the law. But what we have here is a record that makes reference to a motion for a new trial, immediately cites the Rule 29 standard, and says nothing about the standard for a motion for a new trial under Rule 33. This is the part I was referring to. Maybe you could address it. I presided over the entire trial, listened to the witnesses, heard the evidence, and there is simply no basis to grant the new trial a motion. That would be language equally applicable to a ruling under Rule 29. So I said it may be ambiguous, but it's also very consistent with a new trial, because I heard the witnesses, and I listened to the witnesses. And when you listen to the witnesses, that suggests you're making a judgment call about the witnesses. And there is simply no basis. And she says explicitly there's no basis to grant the new trial a motion. You argue that that is a wrong standard. It may not be articulated in the standard fully, but it's not a wrong standard. I respectfully disagree. Listening to witnesses is equally applicable to a Rule 33 and a Rule 29. If she had said something about credibility of witnesses or weight of the evidence or something that would cross over into the Rule 33 context, I would agree with you. But what she said is entirely neutral about whether it is a Rule 29 or a Rule 33. And if she said she denied the new trial motion, so that clause was linked to the two new trial motions. Well, but between the time she said, I would agree. I know there's ambiguity. I'm granting you that. But it's hard to say that she applied the wrong standard when that sentence is the right standard. I don't think there's ambiguity. I think everything she said can only be taken to own the Rule 29. There is nothing about Rule 33 that would stand by itself in what she said. Counsel, in your strong argument, it's three paragraphs. This all turns to three paragraphs. And the first paragraph says, so I'm going to move to the motion for a new trial. Okay. 29 is not a motion for a new trial. That's a motion for acquittal. That's clear. You don't have to say 33. We know that's 33. She said, I'm going to move now to the new trial motion. And we left it open, blah, blah, blah. You know, I don't receive anything additional. Now for the following reasons, I'm going to deny that motion. That motion, the antecedent is 33, because she said the motion for a new trial. That's all she said. Then she goes on to give the wrong standard for it. And then she says in the third paragraph, I'm denied. That's the strongest argument. She said what she was talking about. I agree. Yeah. I mean, I don't see how to get around that. There's only one way to interpret what she said. And again, we are dealing with a cold record. This is not where we can speculate. We are stuck with this record. If I could turn to my second issue in my remaining time. The second issue, which concerns count three, is whether for purposes of 922J, I'm sorry, 924J, a section 1958A offense where death resulted is a crime of violence under the categorical approach after the Supreme Court's decisions, post-Runnion decisions in Borden and Taylor. Well, all right. I mean, I already disagree with that framing because it strikes me the question is whether it is clear or obvious. But the answer to that question is yes. It is clear and obvious. Okay. But the question is not whether that's true. The question, since this issue is 100% forfeited, is not just whether you're right. It's whether you're clearly and obviously right. I am clearly and obviously right. Taylor took out the entire underpinning of Runnion. Taylor said there is no such thing as a reasonable probability test that survives the categorical approach. Okay. So again, I think that's wrong. I think Taylor takes out one part of Runnion's reasoning, but it pretty clearly doesn't take out another part of Runnion's reasoning. On page 204, there is this sentence. I'm sure you know it. It says, if a defendant willfully agrees to enter into conspiracy with a specific intent, Runnion does nothing, sorry, Taylor does nothing to disturb that. Well, Your Honor, the predicate offense here is not a 1958A conspiracy. It is a 1958A substantive offense. So that heightened mens rea language in Runnion is inapplicable to this case. This is just a substantive 1958A. Taylor entirely vitiates that part. Borden, which also was decided after Runnion, says mere recklessness is not enough. So if I can come up with, and I'm admitting this is uncomfortable. I don't like talking about a human's life being taken with hypotheticals. This is the hand we have been dealt by the Supreme Court, so I am going to apply that test. There are numerous hypotheticals one could come up with where 1958A is violated, where there was not more than recklessness. For instance, and this was mentioned in Runnion, and again, I'm not in any way trying to belittle the death of a human being here. If a defendant kidnaps a victim and is driving the victim to a remote location for purposes of killing that person, which would violate 1958A like that. It's already violated. And a car comes out of the blue and crashes into their car, not through anything at the fault of the defendant, and kills the victim. That's a cause of death attributable to the defendant, at least in part. Or, maybe a more realistic scenario, the victim dies of a heart attack. That certainly has happened before when someone is kidnapped. Unless somebody is taken out of an ICU with a heart condition, you could not get above recklessness in that scenario. For that reason, under the categorical approach, the law is obvious and plain. The categorical approach has an architecture like no other in the modern era. Let me ask you this. This goes back a little bit to Judge Hyten's question. In Runnion, we said Section 1958A's mens rea elements cannot be limited to their individual clauses. In other words, we read the willfulness going through the whole thing, and there is no room for recklessness with that approach to Section 1958A. I don't read that Runnion that way. The language that you rely on that's been discarded by Taylor was set forth in that opinion. We've written, and other circuits have written, when you lay out the standard for doing this. But then you have to look a little further and see how the court did it in each individual case. We had the Rice case, which was another case that had a similar thing. We recited the practical matter that's been discarded by Taylor. But when you look at the actual holding of Runnion, it focuses on statutory language and construes the language to apply the mens rea to all the elements. Again, Runnion was a conspiracy. That's even less. This is not even a conspiracy. This is direct. It seems to me a conspiracy would be much harder to show a crime of violence. Actually, Your Honor, it's the opposite. Conspiracy has a willfulness mens rea, which a substantive offense does not. It just has specific intent. I'll reserve my remaining time for rebuttal. With respect to the first issue, Judge Heidens, a couple of times in referring to questioning my friend on the other side, you made a point of saying that the judges normally presume to know the law. That is the key standard that we rely on in this case. I mentioned the Woodard case in my brief about sometimes judges using shorthand descriptions, especially when they're making oral rulings and not written ones. The Supreme Court said, again, in that case, that judges are presumed to know and apply the law. We do presume that unless the court tells you what the law is, as they understand it. That's a misunderstanding. Let's get to the paragraph. You have it, don't you, before you? I have it right in front of me, Judge Gregory. It was the first line that she says. So I'm going to move to the motion for new trial at ECF 198. Right. Wait a minute. That's what she said, the motion for new trial. Is that correct that that has to be the Rule 33, not the 29? Can we agree on that? I would just modify that slightly, Judge Gregory, because I refer to the motion for new trial at ECF 198. And that is the docket number of the combined Rule 29, Rule 33 motion. I thought this was quoting what the judge said. Oh, I understand, yes. So I'm going to move to the motion for new trial. Did she next say, and also the motion for acquittal? Did she? Not directly, Judge Gregory. No, did she say it? The answer is no, she didn't, did she? She did not say it. Again, as I've mentioned in my brief, that it is sometimes the case that judges... We're not talking about sometimes the case. We would never have an appellate court if we're going to judge everything by sometimes the case. We're talking about this case. She said, I'm going to move to the motion to new trial. And then she's left that open and blah, blah, blah. And then she says, and for the following reasons, I'm going to deny that motion. She said, for the following... The antecedent is motion for new trial. The last sentence is, now I'm going to tell you why I am going to deny that motion. Now she says, why? And she lays out the standard, which is wrong. She says, as counsel well knows, the jury's verdict is upheld if there is substantial evidence viewed in the light most favorable to the government in support of a... And then another way of saying it, I can only set aside the jury verdict if I find that no reasonable juror would come to that conclusion, to come to a finding of guilt. That's not the standard for Rule 33. I would agree with you, Judge Gregory, that the standard in that second full paragraph about no reasonable juror is the Rule 29 standard. No, no, no, right, right, right. And that's the only one she said that she's given the reasons for her ruling on that motion, which is the motion for new trial. And then she goes on in the third paragraph and says the three counts it was convicted on, presided, and all this stuff about I saw the whole trial, listened to the witness, that's what all judges do, heard the evidence and there is simply no basis, which she would have to do also with the Rule 33 and the 33 motion too. It's not like that's something, well, this could only be 33. It could be either one. But anyway, the point is, obviously it's preserved. She said there's no basis for a what? New trial, which is the same thing she started with, she ended with, and the middle was the wrong standard. You can't, the rule of lenity would be nonexistent if you say that's not their claim. So I don't want to hear about what judges sometimes do. I can't read their minds. That's why we have records. And she said the standard is what it was and it was wrong. And why wouldn't that be? Why wouldn't you join the motion for a new trial in this case? As we explained in our brief, again, this is an oral ruling. Oral rulings don't have quite the precision that written judgments and written orders have. Second, judges often use shorthand descriptions to decide things. Again, that's why I cited the Supreme Court case in Woodall for the proposition that even the Supreme Court recognized that a court of appeals had not quite enunciated the standard to the precision that it would normally require. Where is the evidence that the shorthand was used? Well, again, the shorthand is, first of all, again, that the judge used the term motion for new trial at ECF 198. ECF 198 is the number of the motion. Mr. Booth, do you recall what that motion was captioned? It was a 16-word. It was a joint motion. Would you know it was captioned on ECF? I'm not precisely sure what it was captioned on ECF. Would it surprise you to learn it was a captioned motion for a new trial on ECF? It wouldn't necessarily surprise me as that, but it's pretty obvious to me that the court— And even though it was a combined motion, it was on ECF as a motion for a new trial. But the judge had the motion, and she used both standards in this particular case, reflecting her understanding that what the defendant had raised was a motion for a judgment of acquittal under Rule 29 and also a motion for a judge for a new trial under Rule 33. What she did in this particular case, if you take what we would say a fairly realistic view of what the judge did in this case, is at first she answered the Rule 29 motion by using the light most favorable to the government. And then in the second paragraph or in the second sentence, she said, I presided over the entire trial, which is 13th juror language that has no application. It doesn't even apply in the Rule 29 context. So we would say that in this context, where the defendant filed a combined Rule 29, Rule 33 motion, and the district court in an oral ruling addresses both the Rule 29 motion, using the light most favorable to the government standard, and then transitions into— You're arguing that, but we have to go by the record. The world construes by its wit. We construe by the law. You know, you might say that that's it, but that's not what the court said. You don't have a right to change what the court said, nor do we. And you're saying that, well, you're whisking away. She only mentioned one motion. That's the motion for a new trial. And she gave the reason, and she said clearly, and for the following reasons, I'm going to deny that motion. You can't get away with it. Get around that. Well, it is important to reflect that, for some reason, the defendant raises a combined Rule 29, Rule 33 motion, and the judge addresses the motion in the context of the standard for the Rule 29, and then goes to the Rule 33. There is no reason for the court to apply the light most favorable to the government standard. You're right, because that's an error. But that doesn't mean that she didn't. I mean, in other words, the fallacy of your argument is that, well, there's no reason that the judge would do the wrong thing, therefore she didn't do the wrong thing. That's fallacious. No, that's not my argument. My argument, as the Supreme Court has indicated time and time again, is that judges are presumed to know and apply the law. And what we're saying in this particular case, whatever ambiguities that you might find in the judge's oral ruling in this case, it doesn't overcome the presumption that your judge applied the law correctly in this particular case. That's our submission. This, again, this was an oral ruling. It doesn't have the precision. What should we do with the rule of lenity? The rule of lenity applies to statutory construction, and I don't believe that that rule has any particular application here. Again, I would... Oh, really? In terms of understanding the record and what the court did clearly, the only way you can convince us is to convince us to not believe what our own eyes see. Well, what I can... Again, I don't want to be the dead horse forever here, Judge Gregory, but our submission here is this case. The defendant filed a joint motion. The district court referred to it using shorthand and in an oral ruling. This was not a written judgment. The oral ruling reflects that the judge used Rule 29 standard and then pivoted to doing the Rule 33 standard. She would not have said, I presided over the entire trial and listened to the witnesses unless she was using the Rule 33 standard. If you remember, Judge Gregory... Excuse me, but if you used the 33, the 29 standard, don't you have to listen to the whole trial? Well, she did. Well, if you act like that, there's something significant about that. Well, it must be 33 because she said she listened to the whole trial. I think that she would have to do that for 29 too, wouldn't she? But she would listen... Wouldn't she have to listen to the whole trial to properly rule on Rule 29? As Judge Niemeyer said, they don't have to go back to the transcript, but they do have to recollect their understanding of the whole trial. Correct? Right. That is correct, Judge Gregory. But, again, the point of her saying that she had listened to the witnesses was important because the defendant's combined 2933 motion was an attack on the government's witnesses and their credibility. The ground for... Apparently, the ground for the new trial was the fact that co-conspirators who were untrustworthy were the main government support. And it seems to me that the way I read what the court was doing, it applied the 29 standard and then it moved over to the 33 standard because you do not need to point out that you listened to witnesses except to suggest that I assess the credibility. That is correct. If you remember, Judge Niemeyer, one of the important points in this particular case was that the defendant testified. And so the District Court was entitled to conclude that the government had presented a pretty strong, compelling case against Navarro and that she had actually listened to Navarro's fairly implausible testimony and that she was rejecting it and actually grounding her ruling on the fact she did not believe that the government's witnesses were incredible as a matter of law. It seems sort of odd to say that here's a judge who's faced with a combined motion. She decides a Rule 29 issue and then a Rule 33. And Judge Heitens points out that the combined motion was labeled a motion for new trial. So if the court is addressing the combined motion, she could use the ECF label in addressing them both. And so that doesn't gain a lot of mileage. The question, I think, is what she said in applying it. And I think it would have been clearer had she said the one standard and then said also with respect to Rule 33 motion, I listened to the witnesses and that type of thing. But it may be somewhat blurred or ambiguous, but it's hard to say that she committed error and didn't know what she was doing. Well, again, under the standard, again, as Judge Heitens had pointed out to my colleague as he's opened up, there's a presumption that the judge knows and applies the law. And there's nothing in this record to show that that presumption has been overcome. I'll agree that this, again, oral rulings tend to be not as precise as written ones. And one can always look at an oral ruling and find that the judge could have said something a little bit better or gone into a little bit more detail. The fact remains is the defendant filed a combined 2933 motion. The judge denied it using the 29 standard in one sentence and then the 33 in another sentence. There's, in our view, no overcoming of the presumption that the judge knew and applied the law correctly in this particular case. If there are no further questions on that, I will turn to the second issue in this case, and that is that Navarro's Section 924J conviction that was based on a 1958 death results predicate crime of violence did not constitute a reversible plain error. Although the court's decision in Runyon that upheld a Section 1958 death results conspiracy offense as a crime of violence does have a Taylor error in it, that means that most of the Supreme Court's decision in Henderson that Runyon may be questionable. But questionable does not meet the second prong of the plain error doctrine. And so we would submit that the conviction should be affirmed. We recognize that in Runyon the court held that a Section 9- Let me back up just one little bit also with respect to the plain error standard. Runyon involved a conspiracy. This case involves the predicate is a substantive 1958. In a previous unpublished decision by this court in Lucas, this court held that a substantive 1958 conviction is a crime of violence. Lucas did not mention the realistic probability test at all. So when you think of Lucas, you think of Runyon, and you think of the high plain error standard that the defendant has to meet, our submission is there was no plain error in this particular case. Well, you said in your friend on the other side's argument that the conspiracy aspect is bad for you because the conspiracy aspect brings in the heightened mens rea associated with the conspiracy in the first one. The one thing we know about conspiracy is that you can't recklessly conspire with someone. You can only intentionally conspire with someone. So would you respond to his argument on that point? Well, again, when you say you cannot recklessly conspire, that was precisely on page 204 of the court's decision in Runyon. No, I 100 percent agree. I'm sorry. I meant to tee up your friend on the other side's argument that that is how Runyon is not helpful, for you as you would like it to be, which is, of course, conspiracy is not a recklessness crime because it's literally impossible to have a reckless conspiracy. But this is not a conspiracy. This is a substantive offense. And one thing that all this ACCA jurisprudence teaches us is apparently it's possible to commit lots and lots of substantive crimes without specifically intending to do so. Well, that may be. But our position here is that you really do not need to reach a determinative decision with respect to how conspiracy works with the substantive. Why don't you just go to the statute? The statute, instead of using the word conspiracy, uses the word interstate commerce with the intent to murder. It's identical. That is correct. You conspire with intent to murder or you use commerce with intent to murder. That is correct. And the decision in Runyon at page 204 emphasizes that in the conspiracy, the defendant has to willfully agree to enter the conspiracy with the specific intent to murder be committed. And then the court then says that he acted with a specific intent to bring about the death. And critical language here, which is not affected by the Taylor error in this case. And this specific intent ensures that the victim's death was necessarily the result of a use of physical force and not merely from negligence and accident. So this court is saying as a matter of statutory construction, 1958A is sort of the conspiracy part, but we would agree that the underlying substantive offense as well. The substantive offense is analogous for this type of analogy. We're looking for the mens rea. That is correct. So if you conspire with the intent to murder or use commerce with the intent to murder, the substantive is to use commerce and some element of commerce with, and the language of the statute says with intent to, with intent that a murder be committed. Yes. Yeah. So that's, and what Runyon contributes is that that mens rea governs the whole schmear and is not stuck to one particular clause. That is correct. That was the whole thing in Runyon, that the mens rea, the intent to commit a murder, extends all the way down to death results. So if you have a specific intent to commit murder coupled with death results, you cannot have a negligent or reckless crime. This is not the case like in Borden where the Tennessee statute specifically had a recklessness mens rea. This has a specific intent offense. This is not governed by Borden at all. So when this court says that the victim's death was necessarily the result of the use of force and not merely from negligence or accident, a negligent or accidental crime is not within the statute based on this court's decision in Runyon. So whatever might be the bit of a questionable result here due to the Taylor mistake, it doesn't rise to the level of plain error under the second prong of the plain error doctrine. One point I would like to mention to the court is that the government has- I just suggest, I don't want to beat a dead horse, but Runyon laid out the Taylor language, the prohibited Taylor language, as the appropriate standard for doing so. But then when it made its holding, it focused on the words of the statute only and construed the mens rea to apply to all causes, not just to the one cause where it appeared. And so if you use commerce with the intent to murder and death results, we construed that in Runyon to be a specific intent statute. Well, I agree with that internally, Judge Niemeyer. But you suggested there may be an error in that under Taylor, and that error came in laying out the standard. We laid out the standard that was then applicable, but when it came time, we did not rely on the way it was prosecuted. We did not survey cases. We did a statutory interpretation. Well, I fully agree with that, Judge Niemeyer. You mentioned that only because- That's binding, that statutory interpretation, because Taylor overruled it. I fully agree with that. This court had simply mentioned the realistic probability standard in responding to a defense hypothetical. And it doesn't matter about the mention. It's a matter of what the court did. And what we did in that is we did a statutory construction, which still remains a permissible way of doing it. Judge Niemeyer, I do not disagree with anything. In fact, that is our position in this case. What happened to little Taylor about realistic probability is a minor issue, and that means that this case doesn't rise to- it doesn't make Runyon questionable, and as a result, it doesn't meet the second prong of the plain error doctrine under Henderson. There are no further questions. We ask you to affirm the conviction. All right, thank you. Mr. Hinton. Thank you. I want to return to the words of the court in denying the motion for a new trial. If you look at the-this is a joint appendix 978-1, 2, 3, 4, 5 lines up. She's talking about the light and most favorable to the government, and she then says the reasonable juror standard to come to a finding of guilt period, and as to the three counts. There is no transition from Rule 29 to Rule 33, and as to the three counts has to be read in the same breath of what she just articulated. So there is no way to interpret this cold record except that is speaking to the motion for a new trial, Rule 33, using the Rule 29 standard. I'd like to now turn back to Runyon. I hear the government arguing that the second prong of the plain error standard is essentially the qualified immunity rule in the civil context, that there has to be something so specifically on point, an exact scenario to be obvious and plain, and I disagree with that. I know the plain error standard has certainly become a much bigger deal in the last three or four decades than it was before then, but plain error doesn't mean 100% no room at all. It means looking at the binding jurisprudence, especially of our Supreme Court. Is there really a way you can distinguish? And in Runyon, and this is a little strange because you wrote Runyon, and you were on the panel on Runyon. I'm just using the words from the opinion. It definitely hinges on a heightened mens rea, which is the conspiracy part. That is central to the court's statutory interpretation about the mens rea element. It was not addressing the substantive. It was addressing the conspiracy. There is no willfulness for the substantive, and the willfulness part of a conspiracy is what was so important to reaching the death result. This is all about death results. This is not about the rest of it. The rest of the statute, the Solicitor General in the case that I mentioned on page 19 of my opening brief, I'm going to mispronounce it, Greg Gorizich or something, at 142 Supreme Court 2580. You know, you've parsed this, and you've left off a critical aspect of it. This is what we said about the mens rea. If a defendant willingly agrees to enter into a conspiracy with the specific intent that murder be committed for money and death results from that agreement, it follows that the defendant acted with specific intent to bring about the death of the conspiracy victim. Now, it seems to me if all you need to do, if the defendant willingly uses interstate commerce with the specific intent that murder be committed for money or death results from that use, it follows that the defendant acted with specific intent to bring about the conspiracy. Here is the use of the interstate commerce. But the point is the specific intent is read to read to the specific intent that death result. Because of the conspiracy willfulness. Well, this is a willful use of commerce. Your Honor, that's not an element of the substantive offense. It is, too. It's in the first sentence. No, Your Honor, willfulness and specific intent are different things. And the specific intent is about the use of interstate commerce with an intent to kill. But the death results is a separate element. And the way the court interpreted the statute. But that overlooks the Runyon analysis of the statute that says we do not restrict the specific intent to one clause. Because of the conspiracy willfulness. I don't know why we say it. We say it because linguistically. Well, if I could, as I've said, the Solicitor General of the United States in the Supreme Court in 2022 conceded, in a case without death results, conceded specific intent. There was not categorically a crime of violence. So I have the United States government agreeing with me. Everything but the death results categorically is not a crime of violence. So the question is, does whatever is left of Runyon after Taylor and Borden get the government to that last clause? See, Taylor doesn't address that. Taylor addresses what we consider. And Taylor leaves alone the statutory construction. Taylor did not undermine Runyon's statutory construction. So if you're going to say the statutory construction in Runyon is wrong, you have to use something other than Taylor. I will close by saying Runyon was a conspiracy case with a heightened mens rea. If it wouldn't have been a conspiracy… Well, that's an argument you can make for the statutory construction, but you cannot use it for Taylor. Oh, it's different from Taylor. Okay. It's different from my Taylor argument. And you're basically saying that because Runyon addressed a conspiracy as opposed to the use of commerce, Runyon's statutory analysis is inapplicable. Precisely. Okay. Thank you. All right. We'll come down and greet counsel and then proceed on to the next case. Oh, just a minute. You're court appointed, right? Yes, Your Honor. I want to recognize that. And not just in passing moment. This is a very important aspect of our whole process. And you've done a wonderful job for your client. And we thank you very much. It's an honor and a privilege to do these court appointments. Yeah, thank you. We'll come down and greet counsel. Thank you.
judges: Paul V. Niemeyer, Roger L. Gregory, Toby J. Heytens